**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

William Riley-El,                )
                                   )
            Plaintiff,       )
                                   )
      v.                  )      Case No. 15 CV 11180
                                   )
Salvador Godinez, et al.,      )      Honorable Judge John Z. Lee
                                   )
            Defendants.   )      Magistrate Judge Young B. Kim

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT**

Defendants Clarence Wright, Joel Shaw, Joshua Clements, Kevin Laskey, Jenny McGarvey, Michael Range, Charles Best, David Mansfield, Tarry Williams, Cherry Marshall, Theodore Fredericks, Jill Hosselton, and Nicholas Lamb ("Defendants"), by and through their attorney, Kwame Raoul, Attorney General of Illinois, submit the following memorandum of law in support of their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff William D. Riley El ("Plaintiff") is an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center ("Stateville"). He brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging three counts of retaliation, in violation of his First Amendment rights, against thirteen current and former employees of the IDOC. Plaintiff believes that Defendants issued disciplinary tickets against him in retaliation for prior grievances and complaints he filed.

Defendants are entitled to summary judgment on all of Plaintiff's First Amendment retaliation claims. First, Plaintiff has not offered any evidence connecting his prior speech with actions of Defendants that would likely deter future First Amendment activity. Specifically, none

of the Defendants were aware of, much less motivated by, Plaintiff's prior speech. Additionally, none of the Defendants imposed discipline on Plaintiff or caused him to suffer any deprivation. Moreover, Plaintiff has not been deterred from continuing to exercise his First Amendment rights through grievances and complaints. Second, the evidence shows that Defendants acted with reasonable, non-retaliatory purposes; therefore, Plaintiff fails to demonstrate that the alleged deprivations would not have occurred in the absence of his prior protected activity. Accordingly, the Court should grant summary judgment in Defendants' favor on all of Plaintiff's claims.

## STANDARD OF REVIEW

Rule 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). Although inferences must be viewed in a light most favorable to the non-moving party, *Cahorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990), the Court is not required to evaluate every conceivable inference that can be drawn from evidentiary matters, only reasonable ones. *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). If the evidence is only colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## ARGUMENT

**I.**     **Plaintiff's First Amendment retaliation claims fail as a matter of law.**

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v.*

*Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "[M]erely alleging the ultimate fact of retaliation is insufficient" to survive summary judgment. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). Rather, a plaintiff must provide sufficient evidence to allow a reasonable jury to find the protected conduct was the reason for the defendant's decision to take adverse action against him. *See Cunningham v. O'Leary*, 40 Fed. Appx. 232, 235 (7th Cir. 2002) (explaining that plaintiff's retaliation claim cannot survive summary judgment without evidence that the defendants would not have engaged in the alleged retaliatory conduct absent retaliatory motives).

A plaintiff cannot establish retaliation by simply showing the protected activity happened before the defendants took their action. *See Stone v. City of Indianapolis Pub. Utils. Div*., 281 F.3d 640, 644 (7th Cir. 2002) (providing that, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue"). Thus, even when a chronology between the two events may raise suspicions they are somehow connected, a plaintiff is still required to point to other reasons that help suggest a relationship between the protected activity and the alleged retaliatory act. *Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918 (7th Cir. 2000). As Judge Posner outlined in *Mays v. Springborn*:

> To establish a prima facie case for retaliation, a prisoner must show that a protected activity … was "at least a motivating factor" in retaliatory action taken against him, i.e., action that would likely deter protected activity in the future. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The burden then shifts to the defendants to show that they would have taken action despite the bad motive. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005-06 (7th Cir. 2005).

575 F.3d 643, 650 (7th Cir. 2009). If defendants can offer a reasonable non-retaliatory motive for the alleged retaliatory conduct, defendants should not be held liable for retaliation unless there is a plausible explanation for why defendants' conduct is merely a pretext. *Id*. The burden on the

3

prisoner is therefore high, as he must show that events would have transpired differently had there been no retaliatory motive. *Babcock*, 102 F.2d at 275. Moreover, "because of 'both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated,' courts should 'examine prisoners claims' of retaliation with skepticism and particular care.'" *Verser v. Smith*, 2017 WL 528381, *8 (N.D. Ill. Feb. 9, 2017) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2nd Cir. 2001)).

As to the first element of Plaintiff's retaliation claims, Defendants do not dispute that filing truthful grievances and lawsuits is a protected First Amendment activity. *See Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005). However, there is no evidence that Plaintiff suffered an adverse action that is likely to deter future First Amendment activity. In addition, Plaintiff has not offered any evidence that his protected activity was 'at least a motivating factor' in Defendants' decision to take the alleged retaliatory acts.

### A.    Defendants' actions were based on legitimate reasons, and not done in retaliation.

Plaintiff fails to show any evidence connecting his prior protected activity with the Defendants alleged retaliatory actions. As such, no retaliatory motive can be reasonably inferred. *See Turley v. Rednour*, 555 F. App'x 606, 609 (7th Cir. 2014).

In Count I, Plaintiff alleges that on November 9, 2013, Defendant McGarvey ordered that he be held in the Healthcare Unit at Stateville for two days, and then transferred to the maximum security wing in X-House, in retaliation for filing grievances [DSOF ¶ 19]; and that Defendant Wright arbitrarily placed him solitary confinement for 3 months in retaliation for naming him as a defendant in a prior lawsuit. *Id*. Plaintiff believes that Defendants retaliated against him for grievances for medical care, and defendants failure to provide necessary medical care that he filed

4

prior to November 7, 2013. *Id.* Count II of Plaintiff's Complaint alleges that on June 15, 2014, Defendants Shaw, Clements, Laskey, McGarvey, Range, Best, Mansfield, and Williams issued a disciplinary ticket in retaliation for the expungement of Plaintiff's November 2013 disciplinary ticket. [DSOF ¶ 20]. He also believes that this was related to grievances filed on 3/27/14, 4/5/14, 4/17/14, and 5/9/14. *Id.* Finally, Count III alleges that Defendants Clements, Shaw, Marshall, Fredericks, Best, Hosselton, and Lamb retaliated against him by issuing a false disciplinary ticket on October 19, 2015. [DSOF ¶ 21]. Yet, Plaintiff has not offered any evidence to support these claims. Rather, the evidence shows that all of the Defendants' actions were proper and taken for non-retaliatory reasons.

First, there is nothing in the record to raise an inference that the disciplinary tickets or Adjustment Committee findings were motivated by prior grievances Plaintiff allegedly filed. Moreover, the evidence shows that none of the Defendants was aware of any of Plaintiff's prior grievances and lawsuits. [DSOF ¶ 53]. Additionally, the record shows that inmate grievances are handled by the Clinical Services Department, and Defendants have never worked in clinical services, or been made aware of any grievances or complaints filed against them. [DSOF ¶ 54]. But, even if Defendants were aware of Plaintiff's prior grievances, they would still be entitled to summary judgment because Plaintiff would have received the tickets regardless of the alleged retaliatory motive. *See Antoine v. Ramos*, 497 F. Appx. 631, 634 (7th Cir. 2012) (granting summary judgment in favor of correctional officers where plaintiff's cell was shook down due to informant's tip that plaintiff had contraband; and therefore, no evidence it would not have occurred but for plaintiff's previously filed grievances); *see also Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977) ("The ultimate question is whether events would have transpired differently absent the retaliatory motive."); *Greene v. Doruff*, 660 F.3d 975,

5

978 (7th Cir. 2011) (holding that no retaliation claim exists where "defendant's improper motive would have done no work, had no effect, left the world unchanged" with respect to the defendants' alleged retaliatory act).

Department Rule ("DR") 504A defined Offense 205 Security Threat Group or Unauthorized Organizational Activity as "engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs. Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450." [DSOF ¶ 64].

Here, the evidence shows that Plaintiff was issued an offender disciplinary report on November 26, 2013. [DSOF ¶ 22]. On November 27, 2013, Defendant McGarvey completed the Shift Review portion of the report that was issued by Officer Junette Bennett charging Mr. Riley El with Offense 205 (STG or Unauthorized Organizational Activity), in violation of DR 504. [DSOF ¶ 22-23]. Based on her review of the charges and the nature of the offense, McGarvey determined it was necessary to place Plaintiff in temporary confinement status. [DSOF ¶ 23]. The reporting officer later issued a corrected report. [DSOF ¶ 24]. Defendant Range served as the Hearing Investigator on that report. *Id*. He did not conduct any further investigation prior to attempting to serve a copy on Plaintiff. *Id*. Defendant Wright was the Chairperson of the Adjustment Committee that heard Plaintiff's ticket on December 10, 2013. [DSOF ¶ 25]. Based on the evidence, the Adjustment Committee found Plaintiff guilty of the charges; and recommended a punishment of 3 months C Grade, 3 months segregation, 3 months commissary

restriction, and 6 months contact visit restriction. [DSOF ¶ 27]. On January 7, 2014, the Warden's office signed the report concurring with the Adjustment Committee's recommended punishment, which made it final. [DSOF ¶ 28].

On June 13, 2014, Defendant Officer Shaw issued Plaintiff a disciplinary ticket for Offense 205 (STG or Unauthorized Organizational Activity) and Offense 601 (Conspiracy to commit Offense 205), in violation of DR 504. [DSOF ¶ 29]. Defendant Shaw believed these charges were appropriate based on an investigation that the Intelligence Unit completed on June 11, 2014. *Id.* The investigation was initiated on June 3, 2014 due to information from Confidential Source ("CS") #1, who identified Plaintiff as the current Institutional Coordinator of the Gangster Disciple ("GD") gang, and stated that he ordered inmates to send care packages or commissary items to other inmates in the gang that were in the segregation unit at Stateville. *Id.* This information was corroborated by two other confidential information that identified Plaintiff as the current Institutional Coordinator. *Id.* On June 13, 2014, Defendant Major Laskey reviewed and signed the report, and found it was necessary to place Plaintiff in temporary confinement status based on the nature of the offense. [DSOF ¶ 30]. On June 14, 2014, Defendant Major McGarvey reviewed and signed the report, determined it was a major infraction, and forwarded it to the hearing investigator. [DSOF ¶ 31]. Defendant Range was the hearing investigator who signed the report and attempted to serve it on Plaintiff on June 15, 2014. *Id.* It was not necessary for Range to conduct any further independent investigation, and he had no further involvement. *Id.* Defendants Best and Mansfield served on the Adjustment Committee that heard Plaintiff's ticket on June 17, 2014. [DSOF ¶ 36]. Based on the evidence prepared by Officer Shaw, the Adjustment Committee found Plaintiff guilty of the charges; and recommended a punishment of 1 year C Grade, 1 year segregation, 1 year commissary restriction, and 6 months contact visit restriction. [DSOF ¶ 37-39]. On June 20, 2014,

Defendant former Warden Williams's designee signed the report concurring with the Adjustment Committee's recommended punishment, which was made final at that time. [DSOF ¶ 40].

On October 19, 2015, Defendant Clements issued Plaintiff an Offender Disciplinary Report for Offense 205 (STG or Unauthorized Organizational Activity), in violation of DR 504. [DSOF ¶ 41]. These charges were appropriate based on the observations Defendant Clements and Shaw made while searching Plaintiff's excess correspondence boxes on October 19, 2015. [DSOF ¶ ]. On that date, two STG-related documents were recovered, which contained common STG references and principles. [DSOF ¶ 42]. In addition, Plaintiff admitted ownership of the documents and is a validated member of the STG organization. *Id.* Based on these observations, and because possession of STG materials violates DR 504, it was appropriate to issue a disciplinary ticket. [DSOF ¶ 43]. On October 20, 2015, Defendant Major Fredericks reviewed and signed the Offender Disciplinary Report issued by Officer Clements, and the decision by Defendant Major Marshall to place Plaintiff in Temporary Confinement status; determined the offense was a Major Infraction based on the nature of the offense, and forwarded it to the Hearing Investigator. [DSOF ¶ 44]. Defendants Best and Hosselton held an Adjustment Committee hearing on October 27, 2015. [DSOF ¶ 48]. Based on the evidence, the Adjustment Committee found Plaintiff guilty of the charges; and recommended a punishment of 1 year C Grade, 1 year segregation transfer (disciplinary), 1 year commissary restriction, and 6 months contact visit restriction. [DSOF ¶ 49]. On October 28, 2015, Defendant Lamb signed the report in place of the Warden, and concurred that the Adjustment Committee's recommended punishment was appropriate for the offense. [DSOF ¶ 50-52].

In sum, Defendants genuinely believed Plaintiff violated department rules when they issued, witnessed, and signed Plaintiff's disciplinary tickets. [DSOF ¶ 22-52]. The belief was based

on the applicable department rules and the evidence and observations that supported the violations. [DSOF ¶ 23-24, 26-27, 29-31, 38-39, 42, 44, 49, 63-64]. Specifically, Plaintiff's November 26, 2013 ticket was based on previously obtained gang intelligence, information from six confidential sources that was deemed reliable through their corroborating statements, and confiscated STG materials, all of which indicated Plaintiff was a high-ranking member of the gang. [DSOF ¶ 22]. Plaintiff's June 13, 2014 ticket was also based on independent, reliable information obtained from three confidential sources, physical evidence that was confiscated by the Intelligence Unit, and department records that all show Plaintiff holds a leadership position, is actively participating and conspiring in unauthorized STG activity. [DSOF ¶ 29]. Finally, Plaintiff's October 19, 2015 ticket was based on Defendants personal observations and discovery of STG literature in Plaintiff's property box, his own admissions, and department records documenting Plaintiff's gang membership. [DSOF ¶ 41-43]. Furthermore, the department rules prohibit inmates from engaging in unauthorized STG activity and holding a leadership position within the IDOC. [DSOF ¶ 64].

Given that Plaintiff would have been disciplined on all three occasions regardless of whether he previously filed grievances and complaints against any of the Defendants, his retaliation claim fails. *See Harris v. Walls*, 604 Fed. Appx. 518, 522 (7th Cir. 2015) (affirming summary judgment in defendants' favor where inmate failed to rebut defendants' evidence that they issued disciplinary ticket based on sincere belief he violated administrative rules and not for any retaliatory reason); *Greene*, 660 F.3d at 978. Thus, summary judgment should be granted for Defendants because they issued and signed the disciplinary reports for legitimate reasons.

### B. Defendants' actions did not cause Plaintiff to suffer an adverse reaction that would deter future First Amendment Activity.

Plaintiff's retaliation claims also fail because he cannot demonstrate that the Defendants caused him to suffer any deprivation likely to deter future protected activity. *See Santana v. Cook*

9

*Cty. Bd. of Review*, 678 F.3d 614, 622 (7th Cir. 2012) (holding that the alleged adverse action "must be sufficient to deter an ordinary person from engaging in that First Amendment activity in the future.").

First, the evidence shows that none of the Defendants personally imposed any discipline on Plaintiff for violating department rules. [DSOF ¶ 32, 46]. Thus, even accepting Plaintiff's claim as true that the Defendants retaliated against him, he cannot show that they caused him to suffer any harm by issuing, reviewing, and conducting hearings on disciplinary reports that did not subject him to any discipline. But, even if Defendants had caused him harm, his claim would still fail because the alleged retaliatory acts did not deter future protected activity. In fact, the evidence shows that Plaintiff continued to file grievances and lawsuits despite the Defendants' alleged retaliation. [DSOF ¶ 55]. Thus, no jury could reasonably conclude that Plaintiff suffered a deprivation likely to deter future protected activity. *See Bridges*, 557 F.3d at 555 (holding no retaliation claim against defendant for allegedly filing a false disciplinary charge because it was insufficient to "deter a person of ordinary firmness from exercising First Amendment activity in the future."); *Smith v. Erickson*, 684 Fed. Appx. 576, 578 (7th Cir. May 5, 2017) (holding no First Amendment violation where defendants allegedly interfered with his grievance process because Plaintiff could not demonstrate harm); *Viehweg v. City of Mt. Olive*, 2013 WL 2457682, at *4 (C.D. Ill. June 6, 2013) (no First Amendment violation where plaintiff allegedly denied right to file grievances "[b]ecause he is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed.").

## C. Defendants were not involved in the underlying constitutional violation.

Finally, Plaintiff's allegations, even accepted as true, are not sufficient to state a First Amendment retaliation claim against Defendants McGarvey, Laskey, Fredericks, Marshall,

Range, Wright, Best, Mansfield, Hosselton, Williams, and Lamb. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, 'to be liable under 1983, an individual must have caused or participated in a constitutional deprivation.'" *Gray v. Taylor*, 714 F. Supp. 2d 903, 911 (N.D. Ill. 2010) (quoting *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7thCir. 2005)). "The constitution does not make public employees strictly, let alone vicariously, liable for injuries that befall their charges." *Pacelli v. DeVito*, 972 F.2d 871, 875 (7th Cir. 1992); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (holding that the doctrine of *respondeat superior* does not apply to actions brought under section 1983). A defendant must therefore be "personally responsible for the deprivation of a constitutional right." *Id*. A plaintiff will establish personal involvement by showing that defendants knew about the conduct or "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

The evidence shows that Defendants McGarvey, Laskey, Fredericks, and Marshall signed off on disciplinary tickets issued to Plaintiff, in which they determined whether to place him in investigative status or temporary confinement and whether it was a major infraction. [DSOF ¶ 23, 30, 31, 44]. In addition, Defendant Range signed off as the Hearing Investigator who served the tickets on Plaintiff. [DSOF ¶ 24, 31]. None of these Defendants were involved in or aware of the underlying investigations or the adjustment committee hearings on the charges. [DSOF ¶ 34, 35, 45, 47]. Furthermore, none of these Defendants personally imposed discipline against Plaintiff at any time. [DSOF ¶ 32, 46]. Their role was purely administrative. [DSOF ¶ 59-61].

Similarly, Defendants Wright, Best, Mansfield, and Hosselton were solely involved in the Adjustment Committee hearings, and not involved in the underlying investigations or the initiation of any charges. [DSOF ¶ 25, 34, 36, 45, 48]. These Defendants merely considered the relevant

11

evidence, determined it substantiated the charges, and recommended a punishment. [DSOF ¶ 26-27, 37-39, 49, 62]. That punishment is merely a recommendation and does not become final until it is approved by the Chief Administrative Officer. [DSOF ¶ 62]. Moreover, Plaintiff even admitted that Defendant Mansfield did not retaliate against him and he could not think of any reason why Defendant Hosselton would have retaliated against him. [DSOF ¶ 71, 76].

Defendant Lamb's only involvement was signing the Final Summary Report, in which he concurred with the recommended punishment for Plaintiff's October 2015 ticket. [DSOF ¶ 51-52]. However, he was not involved in the underlying investigation or proceeding, and his determination was based on the appropriateness of the punishment for the offense, pursuant to the Department Rules. *Id*. Finally, the evidence shows that Defendant Williams was not involved in the issuance or review of any of Plaintiff's disciplinary tickets, the Adjustment Committee hearings on the tickets, or the approval of the Committee's findings and recommended disciplinary action. [DSOF ¶ 40]. Rather, the evidence shows that former Warden Williams's designee reviewed and signed the Final Summary Report for Plaintiff's June 2014 ticket, and Williams had no involvement whatsoever in any of Plaintiff's disciplinary proceedings. *Id*. Therefore, summary judgment should be granted for Defendants McGarvey, Laskey, Fredericks, Marshall, Range, Wright, Best, Mansfield, Hosselton, Williams, and Lamb because there is insufficient evidence from which a jury could reasonably conclude that they violated Plaintiff's constitutional rights.

WHEREFORE, Defendants respectfully request that the Court enter summary judgment on their behalf as to all claims against them in Plaintiff's Complaint, with prejudice, and grant such other relief this court finds reasonable and just.

Respectfully submitted,

KWAME RAOUL
Attorney General for Illinois

/s/ *Colleen M. Shannon*
COLLEEN M. SHANNON
Assistant Attorney General
General Law Bureau
100 W. Randolph St., 13th Floor
Chicago, Illinois 60601
(312) 814-4450
cshannon@atg.state.il.us

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on March 25, 2019, the above and foregoing document was electronically filed using the Court's CM/ECF system, and a copy was also served on Plaintiff at the address below via U.S. mail.

William Riley-El #B-03069
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

/s/ *Colleen M. Shannon*

13