# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM RILEY-EL (#B-03069), ) | |
| ) | |
| Plaintiff, ) | Case No. 15 C 11180 |
| ) | |
| v. ) | |
| ) | Judge John Z. Lee |
| SALVADOR GODINEZ, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff William Riley-El brought this action under 42 U.S.C. § 1983, and claims that thirteen employees of Stateville Correctional Center ("Stateville") retaliated against him for grievances and complaints he had previously filed. Plaintiff names as Defendants Tarry Williams, Nicholas Lamb, Jenny McGarvey, Kevin Laskey, Clarence Wright, Michael Range, Joel Shaw, Joshua Clements, Charles Best, David Mansfield, Jill Hosselton, Cherry Marshall, and Theodore Fredericks.[1] Defendants have filed a motion for summary judgment. For the reasons that follow, the Court grants in part and denies in part Defendants' motion [137].

## Northern District of Illinois Local Rule 56.1

A district court "is entitled to decide [a summary judgment] motion based on the factual record outlined in the Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (internal quotation marks and brackets omitted), *overruled on unrelated grounds*, *Ortiz v. Werner Enters.*, 834 F.3d 760, 764 (7th Cir. 2016); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423

---

[1] The Court dismissed all other Defendants, including Salvador Godinez, in its order screening Plaintiff's complaint. *See* Order of 6/22/16, ECF No. 13.

F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules[.]"); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant.") (citations omitted).

Consistent with the local rules, Defendants filed Local Rule 56.1(a)(3) statements of undisputed fact along with their summary judgment motion. *See* Defs.' LR 56.1(a)(3) Stmt. ("Defs.' SOF"), ECF No. 139. Furthermore, Defendants filed and served on Plaintiff a Local Rule 56.2 Notice, ECF No. 140, which explains in detail the requirements of Local Rule 56.1, as well as the consequences of failing to satisfy those requirements. Plaintiff filed three documents which, taken together, respond to Defendants' summary judgment motion. *See* Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., ECF No. 145; Pl.'s Resp. Defs.' SOF, ECF No. 146; Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., ECF No. 147.

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir. 2013). Under the local rules, "[t]he opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco*, 559 F.3d at 632 (citing N.D. Ill. L.R. 56.1(b)(3)(B)).

In response to many of Defendants' statements of fact, Plaintiff states that he cannot either admit or deny the statement of fact, but he does not cite to the record in support of his position. *See* Pl.'s Resp. Defs.' SOF ¶¶ 22, 26, 29, 37–39, 42–43, 49, 52, 65–69, 76. Although Plaintiff does deny several statements of fact, he again does so without providing any citation to the record in support of his denials. *See id.* ¶¶ 23, 28, 32, 34, 47, 55. Similarly, although in some instances, Plaintiff cites to his deposition testimony in support of his denials, the testimony cited does not support his position. *See id.* ¶¶ 44, 53, 58. As such, Plaintiff has not properly controverted these alleged statements of fact. *See Guy v. Lara*, No. 98 C 3741, 2000 WL 1285417, at *4–5 (N.D. Ill. Sept. 11, 2000); *see also Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009).

Nor did Plaintiff submit any additional statements of fact in support of his opposition to the motion for summary judgment. Local Rule 56.1(b)(3)(c) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008). Furthermore, a non-movant seeking to assert facts that go beyond what is fairly responsive to the movant's factual assertions must do so not in his Local Rule 56.1(b)(3)(B) response, but in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 874 (N.D. Ill. 2014); *Johnson v. Cty. of Cook*, No. 08 C 2139, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-

3

movant is responding, in a Local Rule 56.1(b)(3)(B) response."). Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) statement to which Plaintiff did not properly respond are deemed admitted to the extent they are supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

Nonetheless, "a nonmovant's . . . failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that [he] is entitled to judgment as a matter of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (internal citation omitted). In addition, notwithstanding any admissions, the Court has interpreted Plaintiff's filings generously, consistent with his *pro se* status, and will construe those filings, as well as the record evidence, in the light most favorable to him to the extent he points to evidence in the record or could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *Antonelli v. Sherrow*, No. 02 C 8714, 2005 WL 2338813, at *2 (N.D. Ill. Sept. 21, 2005); *see Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014) ("Although the Court is entitled to require strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings.").

**Factual Background[2]**

Plaintiff is an inmate in the custody of the Illinois Department of Corrections ("IDOC"), incarcerated at Stateville. Defs.' SOF ¶ 1. Defendants are, or were at one time, employees of Stateville. *See id.* ¶¶ 2–14.

---

[2] The following facts are undisputed or deemed admitted except where otherwise noted.

Clarence Wright was a correctional lieutenant from 1996 until July 2015 and the backup chairperson of the facility's Adjustment Committee from approximately 2012 to 2015. *Id.* ¶ 2. Jenny McGarvey was a major or shift supervisor from October 2010 to 2015. *Id.* ¶ 3. Charles Best is a correctional lieutenant and has served as the chairperson of the Adjustment Committee since 2012. *Id.* ¶ 4. Joel Shaw was a correctional officer assigned to the intelligence unit from 2003 to 2016. *Id.* ¶ 5. Joshua Clements was also a correctional officer assigned to the intelligence unit during the relevant time. *Id.* ¶ 6. Kevin Laskey was a major or shift supervisor at all relevant times. *Id.* ¶ 7. Michael Range was a correctional officer at all relevant times and served as a hearing investigator from 2010 to 2013. *Id.* ¶ 8. David Mansfield was a correctional counselor during the relevant time and served as a member of the Adjustment Committee from 2008 to June 2016. *Id.* ¶ 9. Tarry Williams was the warden from April 1, 2014, to July 1, 2015. *Id.* ¶ 10. Cherry Marshall was a major during the relevant time. *Id.* ¶ 11. Theodore Fredericks has been a major or shift supervisor since May 2011. *Id.* ¶ 12. Jill Hosselton was a member of the Adjustment Committee in October 2015. *Id.* ¶ 13. Nicholas Lamb was the assistant warden of operations from July to November 2015, and from February 2017 to present. *Id.* ¶ 14.

## I. Stateville Disciplinary Rules & Procedures

Plaintiff's claims of retaliation center primarily around discipline he received for allegedly acting as a leader in the Gangster Disciples, a group that IDOC has designated a Security Threat Group ("STG"). *See* Defs.' SOF ¶¶ 22, 29, 41. The Illinois Administrative Code ("IAC") sets forth rules and procedures governing discipline in IDOC facilities, which applied to the discipline Plaintiff received in this case. *See id.* ¶¶ 59–64.

In IDOC prisons, a shift supervisor is responsible for reviewing disciplinary reports and determining whether it is necessary to place an offender in investigative status or temporary confinement status pending a disciplinary hearing. *Id.* ¶ 59. The reviewing officer then reviews each disciplinary report and determines whether: (1) the reported facts justify a disciplinary hearing; (2) the disciplinary report has been completed properly; and (3) the offense is major or minor in nature. *Id.* ¶ 60. If the report is not completed correctly, the reviewing officer is required to make the necessary corrections or direct the reporting employee to do so. *Id.* Major offenses are assigned to the Adjustment Committee for a hearing. *Id.* The reviewing officer must forward copies of all major disciplinary reports to the hearing investigator. *Id.*

The hearing investigator may investigate the charges as appropriate. *Id.* ¶ 61. The hearing investigator then determines whether to submit a report to the Adjustment Committee. *Id.* In addition, the hearing investigator may correct or direct the reporting employee to correct any errors in the report. *Id.* The offender is then provided with a copy of the corrected report. *Id.* In the event the corrected report contains new charges, the offender must be provided a copy of the corrected report at least twenty-four hours prior to the hearing unless the offender waives this notice. *Id.*

The Adjustment Committee considers all material relevant to the offense, including oral testimony or written evidence presented by the offender. *Id.* ¶ 62. The Adjustment Committee may also consider information from confidential sources if it finds that the sources' identities must be withheld for security reasons and the information is reliable. *Id.* Reliability can be established by corroborating testimony, such as statements from other sources. *Id.* After reaching its finding,

the Adjustment Committee's decision and recommended punishment, if any, does not become final until approved by the facility's chief administrative officer. *Id*.

Offense 205, "Security Threat Group or Unauthorized Organizational Activity," was at all relevant times considered a major infraction. *Id*. ¶ 63. Department Rule ("DR") 504A defined this offense as "[e]ngaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs." *Id*. ¶ 64.

## II. November 2013 Disciplinary Report

On November 26, 2013, correctional officer Junette Bennett[3] issued Plaintiff a disciplinary ticket for Offense 205. *Id*. ¶ 22. The charges were based on information from the offender-tracking system and multiple confidential sources, identifying Plaintiff as a member of an STG. *Id*. The report stated that, on November 7, 2013, a letter had been found on a confidential source, identifying Plaintiff as an STG member. *Id.* Three additional confidential sources confirmed that Plaintiff was the "institutional coordinator" for the STG. *Id*.; *see* Defs.' Ex. 15, 11/26/13 Disciplinary Records, ECF No. 139-15. The sources explained that the "institutional coordinator" is a "high ranking leader in charge of the institution" for the STG. Defs.' Ex. 15 at 1. The names and identities of the confidential sources were withheld for security reasons, but they were deemed reliable due to the corroborating nature of their statements. Defs.' SOF ¶ 22.

On November 27, McGarvey completed and signed the shift review portion of the report,

---

[3]   The Court previously dismissed Bennett as a Defendant. *See* Order of 6/22/16 at 2–3.

finding that, based on the nature of the offense, it was necessary to place Plaintiff in temporary confinement status. *Id*. ¶ 23. Bennett later completed a corrected copy of the report. *Id*. ¶ 24.

Range served as the hearing investigator for the corrected report, but he did not conduct any further investigation because the charges were based on an investigation already conducted by the intelligence unit. *Id*. Range attempted to serve a copy of the corrected report on Plaintiff on December 9, but Plaintiff refused to sign the document. *Id*.

On December 10, Wright presided over the Adjustment Committee hearing against Plaintiff. *Id*. ¶ 25. The Adjustment Committee reviewed Plaintiff's statement and the written report prepared by Bennett. *Id*. ¶ 26. The Adjustment Committee found Plaintiff guilty of the charges and recommended a punishment of 3 months of C grade,[4] 3 months of segregation, 3 months of commissary restriction, and 6 months of contact visit restriction. *Id*. ¶ 27. On January 7, 2014, the warden's office concurred with the Adjustment Committee's recommendation. *Id*. ¶ 28.

Following that, Plaintiff filed a grievance complaining that he had not been served with the disciplinary report within the time required by the IAC. *See* Defs.' Ex. 1, Am. Compl., Ex. 28, 2/24/14 Response to Committed Person's Grievance, ECF No. 139-1. In response, a grievance officer found that the charge was "not substantiated," because the disciplinary report did "not state what unauthorized gang activity took place." *Id.* The officer recommended expunging the disciplinary report. *Id.*; *see also* Pl.'s Resp. Defs.' SOF ¶ 28 (noting that the discipline he received

---

[4] An inmate in "C grade" is restricted from certain privileges, such as use of the telephone.

was later expunged). The chief administrative officer concurred, writing that the charge *was* substantiated, but noting the violation. Am. Compl., Ex. 28.

## III. June 2014 Disciplinary Report

On June 13, 2014, Shaw issued Plaintiff another disciplinary ticket for Offense 205 and Offense 601 ("Conspiracy to Commit STG or Unauthorized Organizational Activity"). Defs.' SOF ¶ 29. The charges were based on the results of an investigation that was completed on June 11, 2014. *Id*. The investigation revealed that, on June 3, 2014, a confidential source had identified Plaintiff as the current institutional coordinator of the STG known as the Gangster Disciples. *Id*. The confidential source also stated that Plaintiff ordered inmates to send care packages or commissary items to other inmates in the STG who were in the segregation unit at Stateville. *Id*. Two additional confidential sources further identified Plaintiff as the institutional coordinator. *Id*. The names of the confidential sources were withheld for security reasons, but the information obtained from them was deemed reliable due to the corroborating nature of their statements. *Id*.

Laskey completed and signed the shift review portion of the report and determined that it was necessary to place Plaintiff in temporary confinement based on the nature of the offense. *Id*. ¶ 30. After forwarding the report to the reviewing officer, Laskey had no further involvement. *Id*.

The next day, McGarvey reviewed and signed the report, determining that the offense was a major infraction. *Id*. ¶ 31. McGarvey then forwarded the report to Range, who again was the hearing investigator. *Id*. Range reviewed, signed, and attempted to serve the report on Plaintiff on June 15. *Id*. After that, Range had no further involvement. *Id.*

On June 17, Best presided over the Adjustment Committee hearing against Plaintiff. *Id.* ¶ 36. Mansfield served as a member of the Committee. *Id.* The Adjustment Committee reviewed the relevant evidence and statements, including the written report prepared by Shaw. *Id.* ¶ 38. Based on the evidence, the Adjustment Committee found Plaintiff guilty of the charges and recommended a punishment of 1 year of C grade, 1 year of segregation, 1 year of commissary restriction, and 6 months of contact visit restriction. *Id.* ¶ 39. On June 20, Williams's designee (Victor Calloway) concurred with the recommended punishment, making it final. *See id.* ¶ 40.

## IV. October 2015 Disciplinary Report

On October 19, 2015, Clements issued Plaintiff a third disciplinary ticket for Offense 205. *Id.* ¶ 41. The charges were brought based on observations Clements and Shaw made while conducting a search of Plaintiff's correspondence boxes, where they recovered two documents containing common STG references and principles. *Id.* ¶ 42. According to Defendants, Plaintiff admitted ownership of the documents. *Id.* Plaintiff disputes this and contends that the boxes were "suppose[d] to be sealed"—insinuating that the materials were planted. Pl.'s Resp. Defs.' SOF ¶ 42; *see* Defs.' Ex. 17, 10/19/15 Disciplinary Records at 1, ECF No. 139-17 ("Inmate Riley . . . pleads not guilty and states 2 of his legal boxes are cardboard and they were not sealed. I.A planted everything that was found in his box. I'm not a [*sic*] active GD.").

On October 20, Fredericks reviewed the report issued by Clements, as well as the decision by Marshall to place Plaintiff in temporary confinement status, and determined that the offense was a major infraction. Defs.' SOF ¶ 44. Fredericks signed and dated the report and forwarded it to the hearing investigator (who, this time, does not appear to have been Range). *Id.*

On October 27, Best presided over the Adjustment Committee hearing against Plaintiff. *Id*. ¶ 48. Hosselton served as member of the Adjustment Committee. *Id*. The Adjustment Committee reviewed the written report prepared by Clements, shakedown records, and the documents that were found in Plaintiff's property box, which it determined were "STG in nature." *Id*. ¶ 49. The Adjustment Committee found Plaintiff guilty of the charges and recommended a punishment of 1 year of C grade, 1 year of segregation transfer (disciplinary), 1 year of commissary restriction, and 6 months of contact visit restriction. *Id*. On October 28, while serving as the assistant warden of operations, Lamb reviewed and signed the final summary report on behalf of the chief administrative officer. *Id*. ¶ 51.

## V. Defendants' Knowledge of Plaintiff's Prior Grievances and Lawsuits

In addition to the grievance he filed objecting to the November 2013 disciplinary report, Plaintiff filed a number of grievances and lawsuits throughout the period relevant to this case. First, it is a matter of public record that Plaintiff has filed twelve lawsuits in this Court since June 2011.[5] Second, Plaintiff filed approximately twenty-seven grievances from November 9, 2013, to October 2, 2015. *See* Am. Compl., List of Exhibits; *id.*, Exs. 1–2A, 3–26G.

---

[5] Plaintiff has filed the following cases: *Riley-El v. IDOC*, No. 11 C 4401 (N.D. Ill. filed June 28, 2011); *Riley-El v. Godinez*, No. 13 C 5768 (N.D. Ill. filed Aug. 13, 2013); *Riley-El v. State of Ill.*, No. 13 C 5771 (N.D. Ill. filed Aug. 13, 2013); *Riley-El v. State of Ill.*, No. 13 C 5773 (N.D. Ill. filed Aug. 13, 2013); *Riley-El v. State of Ill.*, No. 13 C 6226 (N.D. Ill. filed Aug. 30, 2013); *Riley-El v. State of Ill.*, No. 13 C 6227 (N.D. Ill. filed Aug. 30, 2013); *Riley-El v. Godinez*, No. 13 C 6725 (N.D. Ill. filed Sept. 18, 2013); *Riley-El v. Pfister*, No. 14 C 7776 (N.D. Ill. filed Oct. 3, 2014); *Riley-El v. Godinez*, No. 15 C 10530 (N.D. Ill. filed Nov. 20, 2015); *Riley-El v. Godinez*, No. 15 C 11180 (N.D. Ill. filed Dec. 10, 2015); *Riley-El v. Rauner*, No. 19 C 2002 (N.D. Ill. filed Mar. 22, 2019).

Best, Clements, Fredericks, Laskey, Mansfield, McGarvey, Range, Shaw, and Wright attest that they have never been aware of any grievances or complaints filed by Plaintiff. *Id.* ¶¶ 53, 58. Grievances are handled internally by the Clinical Services Department. *Id.* ¶ 54. Best, Clements, Fredericks, Laskey, Mansfield, McGarvey, Range, Shaw, and Wright have never been assigned to the Clinical Services Department. *Id.* Plaintiff disputes that these Defendants were unaware of his prior grievances and lawsuits. Pl.'s Resp. Defs.' SOF ¶¶ 53, 58.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

Moreover, Rule 56 requires the district court to grant a motion for summary judgment after discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *See id.* Once the moving party has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmoving party must then set forth specific facts showing that there are disputed material facts that must be decided at trial. *See id.* at 321–22.

## **Analysis**

Plaintiff contends that Defendants have retaliated against him in violation of the First Amendment, by issuing him disciplinary tickets and taking other adverse actions because of grievances and complaints he has filed. Defendants have moved for summary judgment, contending that Plaintiff fails to establish retaliation as a matter of law or that they were personally involved in the adverse actions he experienced.

At the summary judgment stage of a retaliation action, a plaintiff must present evidence permitting a reasonable jury to conclude that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) his First Amendment activity was at least a motivating factor in Defendants' decisions. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)); *Laboy v. Pounovich*, No. 13 C 4882, 2016 WL 4245505, at *7 (N.D. Ill. Aug. 11, 2016).

Once the plaintiff makes a *prima facie* showing by establishing these three elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action regardless of any retaliatory motive. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). If the defendants provide legitimate and non-retaliatory reasons for their actions, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See, e.g.*, *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

## I. Protected First Amendment Activity

Defendants concede that Plaintiff engaged in speech protected by the First Amendment in that he has filed numerous grievances and lawsuits about various aspects of prison life while he was incarcerated. Thus, Plaintiff has satisfied the first element of a *prima facie* case for retaliation.[6]

---

[6] During Plaintiff's deposition, he described interactions with several of Defendants—such as Best, McGarvey, and Lamb—in which he complained about his treatment and the conditions at the prison; Plaintiff testified that these Defendants retaliated against him for doing so. *See, e.g.*, Defs.' Ex. 2, Pl.'s Dep. at 39:2–40:12, 50:24–52:10, 68:21–70:3, ECF No. 139-2. But, in responding to Defendants' motion for summary judgment, Plaintiff does not contend that any of this speech forms the basis of his retaliation claim. Instead, he focuses solely on his grievances and lawsuits. Accordingly, to the extent Plaintiff could have argued that he engaged in other forms of protected activity, he has waived that argument. *See Griffin v. City of Milwaukee*, 74 F.3d 824, 828 (7th Cir. 1996).

## II. Deprivation Likely to Deter Future First Amendment Activity

The record also indicates that Plaintiff was disciplined at least three times between November 2013 and October 2015, resulting in three separate sentences of segregation, transfers to different IDOC facilities, assignment to C grade, and commissary and visitation restrictions.[7] Disciplining a prisoner or transferring him to another facility can support a First Amendment claim if based on a retaliatory motive. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (concluding that a transfer from Stateville to another facility, in retaliation for filing a grievance or suit, sufficed to establish a deprivation likely to deter future protected First Amendment activity); *Wilson v. Rensing*, No. 3:15-cv-1249-NJR-DGW, 2018 WL 784053, at *3 (S.D. Ill. Feb. 8, 2018) (noting that a jury could find that the plaintiff had suffered a substantial deprivation from spending one month in segregation followed by one month on increased security status with restricted privileges); *Cullum v. Godinez*, No. 3:14-cv-00012-SMY-PMF, 2016 WL 304865, at *1 (S.D. Ill. Jan. 25, 2016) (explaining that a jury could find that the plaintiff had suffered a deprivation likely to deter future protected activity where he spent thirty days in a segregation unit, lost gym and yard privileges for thirty days, lost access to commissary privileges for thirty days, had his security level demoted, and lost some personal items). Plaintiff has therefore established deprivations sufficient to satisfy the second requirement for a *prima facie* showing of retaliation.

---

[7] Plaintiff testified during his deposition as to other allegedly retaliatory acts besides his discipline, such loss of property and refusal to provide him with appropriate meals. But in his response to Defendants' motion for summary judgment, he focuses on the discipline he received. Thus, to the extent he wishes to argue that he experienced other retaliatory actions, he has waived that argument. *See Griffin*, 74 F.3d at 828. Additionally, Plaintiff does not explain which of Defendants was allegedly responsible for those actions or when they took place.

15

**III. Retaliatory Motive**

Defendants argue that they had no retaliatory motive as many of them were unaware of Plaintiff's prior protected activity, and even those who knew of his protected activity were motivated only by legitimate disciplinary concerns. Furthermore, Defendants contend that their personal involvement in Plaintiffs' discipline was insufficient to subject them to liability.

**A. Knowledge of Plaintiff's Protected Activity**

As an initial matter, Defendants argue that nine out of the thirteen of them—Best, Clements, Fredericks, Laskey, Mansfield, McGarvey, Range, Shaw, and Wright—were not aware of Plaintiff's protected activity before they alleged conduct.[8] To show causation for purposes of a retaliation claim, a plaintiff must raise an inference that the person responsible for the adverse action was aware of the protected activity in the first place. *See Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 805 (N.D. Ill. 2014) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). Each of these nine Defendants has filed an affidavit asserting that they were not, in fact, aware of any of Plaintiff's prior grievances or lawsuits at any time before this case. *See* Defs.' SOF ¶¶ 53, 58 (citing affidavits).

As for Best, Clements, Fredericks, Laskey, Mansfield, McGarvey, and Shaw, the Court agrees that there is no genuine issue of fact. Plaintiff generally responds that everyone at Stateville was aware of his lawsuits and grievances. But this constitutes little more than impermissible speculation that these *particular* Defendants were aware of his protected activity. *See Kuhn*,

---

[8] Defendants do not contest Lamb's, Williams's, Hosselton's, or Marshall's awareness of Plaintiff's prior protected activity.

63 F. Supp. 3d at 805 ("Kuhn's mere speculation about her supervisors' awareness is not sufficient to survive summary judgment."). Plaintiff points to no other evidence supporting an inference of these seven Defendants' awareness of his grievances or litigation activity.

A slightly different story emerges with respect to Range and Wright. First, Plaintiff pointed out during his deposition that he had already sued Wright before the events underlying this lawsuit occurred. *See* Pl.'s Dep. at 85:1–4. The Court takes judicial notice of the fact that, indeed, Clarence Wright was named as a Defendant (and filed an appearance through counsel) in No. 11 C 4401, *Riley-El v. State of Ill.* (N.D. Ill. filed June 28, 2011). On that basis, a reasonable jury could find that Wright was aware, prior to 2013, of Plaintiff's protected activity.[9]

Second, Plaintiff testified during his deposition that, in 2013, he talked to Range, who told him "the reason they mess with you is because they feel that you are bullying them with their own rules." Pl.'s Dep. at 72:7–9. At the time, Plaintiff and Range had been talking about the disciplinary ticket Plaintiff received in November 2013. *See id.* at 70:21–72:12; *see also id.* at 80:15–18. A reasonable jury could find, based on this statement, that Range knew of Plaintiff's prior grievances or lawsuits before his involvement in Plaintiff's discipline.

## B.     Legitimacy of Plaintiff's Discipline

Accordingly, the next question is whether a reasonable jury could find that any of the remaining six Defendants—Wright, Range, Lamb, Williams, Hosselton, or Marshall—were

---

[9] The Court also notes that Plaintiff may have named Fredericks in a prior lawsuit as well. *See* No. 13 C 5773, *Riley-El v. State of Ill.* (N.D. Ill. filed Aug. 13, 2013) (naming "Major Freddricks" as a Defendant). But the docket does not reflect that Fredericks, or anyone else for that matter, was ever served in that case. Accordingly, unlike with Wright, this case filing does not raise a genuine issue of fact as to Fredericks's awareness of Plaintiff's protected activity.

17

motivated by Plaintiffs' protected activity when they participated in disciplining him. To this point, Defendants argue that they have established legitimate, non-retaliatory reasons for Plaintiff's discipline that Plaintiff has not rebutted.

Based upon its review of the record, however, the Court concludes that Plaintiff has raised a genuine issue of fact as to the legitimacy of the discipline he received. Key to this decision is the fact that, after Plaintiff had served three months' segregation for his November 2013 disciplinary ticket, the ticket was expunged. *See* Am. Compl., Ex. 28. A reasonable jury could find from this fact that the discipline Plaintiff received was illegitimate, rather than based on legitimate, non-retaliatory reasons. Both Wright and Range were involved in effectuating this discipline and have not offered any other evidence supporting non-retaliatory motives.

The Court likewise concludes that there are genuine issues of fact with respect to the legitimacy of the June 2014 and October 2015 discipline Plaintiff received. In particular, the timing of these disciplinary tickets—in light of the disputed legitimacy of the initial November 2013 ticket—is suspect. As previously explained, Plaintiff served three months' segregation after the November 2013 ticket, but it was expunged in March 2014. *See id.* Plaintiff testified that, despite the expungement, he was kept in segregation until June 2014, when he was disciplined again based on allegations substantially similar to the November 2013 ticket. *See* Pl.'s Dep. at 74:12–14, 77:4–14; *see also* Defs.' Ex. 16. The June 2014 ticket resulted in a year in segregation, after which Plaintiff soon received his third disciplinary ticket and another year in segregation. *See* Defs.' Ex. 17. Each of these instances of discipline alleged that Plaintiff had been engaged in unauthorized gang leadership activity—which Plaintiff testified would have been impossible, or

at least difficult, given that he was in segregation for almost the entire relevant time period. *See* Pl.'s Dep. at 41:2–22. Based on this chain of events, a reasonable jury could infer that the June 2014 and October 2015 discipline arose from a desire to keep Plaintiff in segregation rather than for legitimate purposes. Range, Williams, Hosselton, Marshall, and Lamb were involved in these instances and have not offered any other evidence in support of the discipline's legitimacy.

### C. Personal Involvement

Still, Defendants argue that they were not sufficiently involved in Plaintiff's discipline to support their liability. Under § 1983, an individual must have "caused or participated in a constitutional deprivation." *Gray v. Taylor*, 714 F. Supp. 2d 903, 911 (N.D. Ill. 2010) (quoting *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)). Based on that standard, the arguments raised by Wright, Range, Hosselton, Marshall, and Lamb—each of whom certainly "participated" in Plaintiff's disciplinary processes—are unavailing. *Id.*

As for Williams, however, the Court agrees that Plaintiff has failed to point to sufficient evidence of personal involvement. The undisputed evidence shows that Williams designated someone else—Victor Calloway—to sign off on the final report of Plaintiff's second disciplinary ticket. *See* Defs.' Ex. 12, Williams Decl. ¶ 3, ECF No. 139-12. The only basis for holding Williams liable, then, would be as Calloway's supervisor; however, there is no *respondeat superior* liability under § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see also Wofford v. Sutton*, No. 03-cv-725-JPG, 2008 WL 4570629, at *6–7 (S.D. Ill. Sept. 16, 2008) (concluding that wardens could not be held personally responsible where they designated to someone else the responsibility of responding to the plaintiff's grievances

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment [137]. Summary judgment is entered in favor of Defendants Shaw, Clements, Laskey, McGarvey, Best, Mansfield, Williams, and Fredericks. Summary judgment is denied as to Defendants Wright, Range, Marshall, Hosselton, and Lamb. A status hearing is set for 3/9/20 at 10:00 a.m. Defense counsel should arrange for Plaintiff's participation by telephone.

**IT IS SO ORDERED.**                    ENTERED:   2/24/20

*[signature: John Z. Lee]*
_____
**JOHN Z. LEE**
**United States District Judge**